UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| BLANCA I. VÁZQUEZ-BURGOS, NADIANET GUADALUPE-SANTOS, MARGARITA RODRÍGUEZ-GRAU, BLANCA I. OLIVO-MIRANDA, MARIA M. RIVAS-MIRANDA, REBECCA ORTIZ-ORTIZ, LUISA A. ACEVEDO-RIVERA, NILSA A. MIRANDA-ROSARIO, FELICITA RIVERA-CRUZ, NANCY M. ORTIZ-LORENZANA, MYRTA SERRANO-CRUZ, ALBA FIGUEROA-OTERO, WANDA I. VÁZQUEZ-BURGOS,<br><br>Plaintiffs,<br><br>v.<br><br>JUAN JOSE RODRÍGUEZ-PÉREZ, BLANCA L. AYALA-RAMOS, REINALIZ MIRANDA-MONTES, MUNICIPALITY OF CIALES, JOHN DOE, JANE DOE, JESUS RESTO-RIVERA,<br><br>Defendants. | Civil No. 13-1701 (JAF) |

**OPINION AND ORDER**

Plaintiffs Blanca I. Vázquez-Burgos ("Vázquez-Burgos"), Nadianet Guadalupe-Santos ("Guadalupe-Santos"), Margarita Rodríguez-Grau ("Rodríguez-Grau"), Blanca I. Olivo-Miranda ("Olivo-Miranda"), María M. Rivas-Miranda ("Rivas-Miranda"), Rebecca Ortiz-Ortiz ("Ortiz-Ortiz"), Luisa A. Acevedo-Rivera ("Acevedo-Rivera"), Nilsa A. Miranda-Rosario ("Miranda-Rosario"), Felícita Rivera-Cruz ("Rivera-Cruz"), Nancy M. Ortiz-Lorenzana ("Ortiz-Lorenzana"), Myrta Serrano-Cruz ("Serrano-Cruz"), Alba Figueroa-Otero ("Figueroa-Otero"), and Wanda I. Vázquez-Burgos ("Vázquez") (collectively "Plaintiffs") are suing Defendants Juan José Rodríguez-Pérez ("Rodríguez-

Pérez"), in both his personal and official capacity; Blanca L. Ayala-Ramos ("Ayala-Ramos"), in both her personal and official capacity; Reinaliz Miranda-Montes ("Miranda-Montes"), in both her personal and her official capacity; the Municipality of Ciales ("Ciales" or "the Municipality"); John Doe; Jane Doe; and Jesús Resto-Rivera ("Resto-Rivera"), in his personal capacity and in his official capacity (collectively "Defendants").

Plaintiffs allege violations of the First Amendment of the United States Constitution, by way of political discrimination and retaliation, as well as violations of the laws and Constitution of the Commonwealth of Puerto Rico.  (Docket No. 21.) Defendants argue that we must dismiss the complaint.  (Docket No. 35.)  For the reasons below, we deny the Defendants' motion to dismiss.

## I.

## **Procedural History**

On September 16, 2013, Plaintiffs filed a complaint against Defendants, which they amended on November 21, 2013, and again on December 12, 2013.  (Docket Nos. 1, 10, 21.)  The second amended complaint alleges violations of the First Amendment of the United States Constitution, by way of political discrimination and retaliation, as well as violations of the laws and Constitution of the Commonwealth of Puerto Rico.  (Docket No. 21.)  On February 11, 2014, Defendants filed a motion to dismiss for failure to state a claim.  (Docket No. 35.)  Plaintiffs responded on March 10, 2014.  (Docket No. 40.)  The Municipality of Ciales replied on March 17, 2014.  (Docket No. 45.)  On March 18, 2014,

Resto-Rivera filed a second motion to dismiss for failure to state a claim. (Docket No. 47.)

## II.

## **Facts**

When considering a motion to dismiss, we must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 39-40 (1st Cir. 2010) (citation omitted). Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiffs' version of the events at issue.

The thirteen Plaintiffs previously worked for the Municipality of Ciales. (Docket No. 40 at 2.) Those who worked in the Municipality's Child Care Center program are jointly identified as the "Child Care Plaintiffs." The two, Vázquez and Serrano-Cruz, who worked in the Municipality's Even Start Program, are referred to as "Even Start Plaintiffs." (Docket No. 40 at 3, fn. 2.) Plaintiffs were all transitory employees. Their employment contracts had been consistently renewed, some for over eleven years.[1] (Docket No. 40 at 2.)

Outside their jobs, Plaintiffs were active in the campaign and political activities of the former NPP-affiliated mayor, and Plaintiffs' families are well-known in Ciales as loyal affiliates and followers of the NPP. Plaintiffs include poll-workers, electoral coordinators, voting center volunteers, campaign workers, and members of the former

---

[1] The First Circuit calls employees "transitory" when they work according to contracts that are periodically renewed, rather than in career positions. See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 52 (1st Cir. 2013). This status does not prevent Plaintiffs from bringing an action under Section 1983. See id.

mayor's advance team, among other political functions and positions. Plaintiffs actively participated in walk-abouts, meet and greets, and motorcades with the former mayor. They also displayed the former mayor's and NPP's political propaganda at their homes. Most of this propaganda could be readily seen by residents of the Municipality, including by Defendant Rodríguez-Pérez, who walked by the Plaintiffs' homes and who, allegedly, along with codefendants, monitored the collaborators and supporters of his political adversaries. Plaintiffs' political affiliations were common knowledge in the small Municipality of Ciales. (Docket No. 40 at 2.)

Ciales had been under the political control of the New Progressive Party ("NPP") for twelve years, from January 2001 to January 2013. In November 2012, the Popular Democratic Party ("PDP")-affiliated candidate, Rodríguez-Pérez, won the mayor's seat by a 66-vote margin in a bitter election. (Docket No. 40 at 1.) Soon thereafter, Rodríguez-Pérez sued the former mayor accusing him of failing to initiate the transition process required by law. This contributed to the already highly-charged political atmosphere in the Municipality. (Docket No. 40 at 2-3.) Rodríguez-Pérez was sworn in on or about mid-January 2013. Within days, Rodríguez-Pérez selected PDP Ciales activists Ayala-Ramos and Miranda-Montes for the positions of Human Resources Director and Director of the Child Care Center, respectively. Resto-Rivera, another PDP-activist, was selected as the new Human Resources Director in April 2013 when Ayala-Ramos resigned. (Docket No. 40 at 3.)

The Child Care Plaintiffs' appointments were set to expire on March 31, 2013. Each time Plaintiffs asked Miranda-Montes about the status of their reappointments, she

said that the appointments would be renewed soon, but that the Municipality first needed notification that their federal funding proposal for the Child Center had been approved. (Docket No. 40 at 3.) Miranda-Montes also said that any reappointment would be dependent on the results of a performance evaluation. Miranda-Montes told Plaintiffs to buy their uniforms and that if for some reason they could not be reappointed before the termination date, they would be later reinstated. (Docket No. 40 at 4.) The Child Care Plaintiffs were never evaluated. Defendants trained new PDP-affiliated individuals who did not work in the Municipality. Further, Rodríguez-Pérez – the nominating authority of the Municipality – had openly expressed his desire to remove Plaintiffs because they were "Palmas" (the nickname for NPP loyalists), who he said had made his life difficult. All of the Plaintiffs' substitutes are loyal followers of and contributors to the PDP and Rodríguez-Pérez' campaign. (Docket No. 40 at 4.)

The Even Start Plaintiffs were given letters on or about June 2013, signed by Defendant Resto-Rivera, informing them that their appointments were to end on June 30, 2013. They were not evaluated before the expiration of their term. Defendants extended the appointments for employees affiliated with the PDP, but not for those employees affiliated with the NPP. The NPP-affiliated employees were substituted with newly-hired PDP-affiliated employees. (Docket No. 40 at 4.)

**III.**

**Analysis**

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal,

556 U.S. 662, 677 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. <u>Rodríguez-Ramos</u>, 685 F.3d at 39-40 (citation omitted).

The inquiry into plausibility is a two-step process. First, we must separate out "conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 53 (2013). Second, we must decide if the factual allegations afford "a plausible claim to relief." <u>Id.</u> We must keep in mind that "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." <u>Id.</u> at 54. The elements of the prima facie case are only "used as a prism to shed light upon the plausibility of the claim." <u>Id.</u> What matters is the "cumulative effect of the factual allegations." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 14 (1st Cir. 2011). The First Circuit has stated that a "plausible but inconclusive inference from pleaded facts will survive a motion to dismiss." <u>Id.</u> at 15 (internal citations omitted).

**A.     First Amendment Claims**

Plaintiffs allege violations under the First Amendment to the United States Constitution. (Docket No. 21 at 4; 42 U.S.C. § 1983.) Because they claim political discrimination by state actors, Section 1983 is the proper vehicle for relief. For the purposes of this section, Puerto Rico is treated like a state. <u>Rodríguez-Reyes</u>, 711 F.3d at 54.

Case 3:13-cv-01701-GAG   Document 67   Filed 05/14/14   Page 7 of 13
Civil No. 13-1701 (JAF)                                                                          -7-

**1.     42 U.S.C. § 1983**

Defendants argue that the Plaintiffs fail to state a valid claim under 42 U.S.C. § 1983 against the individual defendants. (Docket No. 35 at 15.) The two necessary elements for an action under Section 1983 are "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the constitution or laws of the United States." Rodríguez-Pérez-Reyes, 711 F.3d at 55 (quoting Martinez v. Colón, 54 F.3d 980, 98 (1st Cir. 1995.))

The Supreme Court has written that "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42 at 50 (1988). Further, it is settled law that "government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez, 640 F. 3d at 13. As explained below, we find that Plaintiffs have indeed stated a claim that government officials took adverse action against them on the basis of political affiliation, in jobs for which political loyalty was not an appropriate requirement. Therefore, Plaintiffs have stated a valid claim under §1983.

Defendants also argue that Plaintiffs have failed to establish a connection between the alleged actions of discrimination and co-defendant Ayala-Ramos' conduct. (Docket No. 35 at 17.) Ayala-Ramos was the Human Resources Director of the Child Care Center. (Docket No. 40 at 3.) The inference is clear that a Human Resources Director might be involved in a practice of political discrimination in employment.

### 2. **Municipal Liability**

Defendants argue that municipal liability cannot be imposed because *respondeat superior* cannot be the basis for municipal liability under 42 U.S.C. § 1983. (Docket No. 35 at 18; Monnel v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978)). They argue that the complaint lacks any factual predicate to conclude that the Municipality of Ciales' policy or its custom and usage resulted in the violation of Plaintiffs' constitutional rights. (Docket No. 35 at 18-19.) According to the Supreme Court:

> [L]ocal governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

Monell, 436 U.S. at 690-91. The Court stated that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. A municipal "custom," in the context of municipal liability under § 1983, consists of "persistent practices of state officials […which] [a]lthough not authorized by written law, […are] so permanent and well settled as to constitute a 'custom or usage' with the force of law." Adickes v. S.H. Kress & Co., 398 U.S. 167-68 (1970).

In this case, Plaintiffs allege that they were never evaluated and that none of the NPP-affiliated employees had their contract renewed by the municipal officials in charge of hiring. The Plaintiffs allege that, at least in the Even Start Program, the Municipality

renewed appointments for all previous employees affiliated with the PDP.  Finally, the Plaintiffs allege that the Municipality substituted every NPP-affiliated employee with a newly-hired PDP-affiliated employee. (Docket No. 40 at 4.)  This appears to constitute a "custom" under the foregoing definition.

### 3. Political Discrimination

It is settled law that "government officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment."  Ocasio-Hernandez, 640 F. 3d at 13.  Defendants do not argue that political loyalty is an appropriate requirement for these positions.  (See Docket Nos. 35, 47.)

Within this context, the First Circuit has stated that an actionable claim of political discrimination must show four elements: "[T]hat the protagonists are members of opposing political parties; that the defendant knows of the plaintiff's political affiliation; that an adverse employment action occurred; and that political affiliation was a substantial or motivating factor behind the adverse action." Grajales v. Puerto Rico Ports Authority, 682 F.3d 40, 46 (1st Cir. 2012).  Defendants state that for the purposes of this motion, they do not dispute that the protagonists are members of opposing political parties or that an adverse employment action occurred. (Docket No. 35 at 7.)  Therefore, we will focus on the other two elements.

#### a. Defendant knew of Plaintiffs' political affiliation

For pleading purposes, "knowledge may be inferable from other allegations in the complaint." Rodríguez-Reyes, 711 F.3d at 55. Plaintiffs allege that they were active in

the campaign and political activities of the former NPP-affiliated mayor and that Plaintiffs' families are well-known in Ciales as loyal affiliates and followers of the NPP. Plaintiffs include poll-workers, electoral coordinators, voting center volunteers, campaign workers, and members of the former mayor's advance team. They actively participated in walk-abouts, meet and greets, and motorcades with the former mayor. They also displayed the former mayor's and NPP's political propaganda at their homes. Most of this propaganda could be readily seen by residents of the Municipality, including by Defendant Rodríguez-Pérez, who walked by the Plaintiffs' homes and who, allegedly, along with codefendants, monitored the collaborators and supporters of his political adversaries. Plaintiffs allege that their political affiliations were of common knowledge in the small Municipality of Ciales. (Docket No. 40 at 2.)

The First Circuit has stated that information can also be generally available due to a "politically charged atmosphere." Rodríguez-Reyes, 711 F.3d at 55. Ciales had been under the political control of the New Progressive Party ("NPP") for twelve years, from January 2001 to January 2013. In November 2012, the Popular Democratic Party ("PDP")-affiliated candidate, Rodríguez-Pérez, won the mayor's seat by a 66-vote margin in a bitter election. (Docket No. 40 at 1.) Soon thereafter, Rodríguez-Pérez sued the former mayor accusing him of failing to initiate the transition process required by law. Plaintiffs allege that this contributed to the already highly-charged political atmosphere in the Municipality. (Docket No. 40 at 2-3.)

In an analogous case, the First Circuit found it important that the plaintiffs were replaced by workers affiliated with the newly-empowered political party, even though the

plaintiffs could not identify those replacements by name.  Ocasio-Hernandez, 640 F.3d at 14. Plaintiffs allege that all of Plaintiffs' substitutes are loyal followers and contributors of the PDP and Rodríguez-Pérez' campaign.  (Docket No. 40 at 4.)  Plaintiffs allege that Defendants extended the appointments of Even Start employees affiliated with the PDP, but not of those employees affiliated with the NPP.  (Docket No. 40 at 4.)

Looking at the totality of the complaint, Plaintiffs have adequately pleaded this element.

### b. Political affiliation was a substantial or motivating factor behind the adverse action

The First Circuit has held that "'[s]moking gun' proof of discrimination is rarely available, especially at the pleading stage" and is, therefore, unnecessary.  Grajales, 682 F.3d at 49.  The First Circuit has also stated that "a politically charged employment atmosphere 'occasioned by a major political shift … coupled with the fact that plaintiffs and defendants are of competing political persuasions … may be probative of discriminatory animus."  Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993) (cited with approval in Ocasio-Hernandez, 640 F.3d at 17).  Ciales had been under the political control of the New Progressive Party ("NPP") for twelve years, from January 2001 to January 2013.  In November 2012, the Popular Democratic Party ("PDP")-affiliated candidate, Rodríguez-Pérez, won the mayor's seat by a 66-vote margin in a bitter election. (Docket No. 40 at 1.)  Soon thereafter, Rodríguez-Pérez sued the former mayor accusing him of failing to initiate the transition process required by law.  Plaintiffs allege

that this contributed to the already highly-charged political atmosphere in the Municipality. (Docket No. 40 at 2-3.)

Further, "[f]or pleading purposes, circumstantial evidence often suffices to clarify 'a protean issue such as an actor's motive or intent.'" Rodríguez-Pérez-Reyes, 711 F.3d at 56 (quoting Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991)). Temporal proximity "unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated." Ocasio-Hernandez, 640 F. 3d at 18.

The First Circuit also found it "'helpful' in demonstrating that a particular plaintiff was targeted for his or her political views" when the plaintiffs' employment positions were filled almost immediately by workers affiliated with the newly-empowered political party. Id. (citations omitted). Here, the PDP-affiliated mayor was sworn in on or about mid-January 2013. (Docket No. 40 at 3.) The Child Care Plaintiffs' appointments expired March 31, 2013, and they allege that they were immediately replaced by PDP-affiliated employees. (Docket No. 40 at 3-4.) The Even Start Plaintiffs' appointments ended June 30, 2013, and they allege that all NPP-affiliated employees were substituted with newly-hired PDP-affiliated employees. (Docket No. 40 at 4.) According to these facts, the Plaintiffs were terminated at the earliest opportunity following the election and their spots were immediately filled by workers affiliated with the newly-empowered political party. Other such circumstantial evidence can include "statements of officials indicating an intent not to renew the contracts of persons affiliated with other political parties, [and] the absence of any nondiscriminatory explanation for the adverse

employment actions." Rodríguez-Reyes, 711 F.3d at 57. Rodríguez-Pérez openly expressed his desire to remove Plaintiffs because they were "Palmas" (the nickname for NPP loyalists), who he said made his life difficult. (Docket No. 40 at 4.) In totality, Plaintiffs have sufficiently pleaded this element.

**B.    Claims Under Puerto Rico Law**

Defendants stated that the "Puerto Rico law claims are not addressed in [their] instant motion." (Docket No. 35 at 2) (alteration ours). Therefore, we choose not to address those claims in this opinion.

## IV.
## Conclusion

For the foregoing reasons, the Defendants' motions to dismiss (Docket Nos. 35, 47) are **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of May, 2014.

                                                                        S/José Antonio Fusté
                                                                       JOSE ANTONIO FUSTE
                                                                       U. S. DISTRICT JUDGE