UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

BLANCA I. VÁZQUEZ-BURGOS, NADIANET GUADALUPE-SANTOS, MARGARITA RODRÍGUEZ-GRAU, BLANCA I. OLIVO-MIRANDA, MARIA M. RIVAS-MIRANDA, REBECCA ORTIZ-ORTIZ, LUISA A. ACEVEDO-RIVERA, NILSA A. MIRANDA-ROSARIO, FELICITA RIVERA-CRUZ, NANCY M. ORTIZ-LORENZANA, MYRTA SERRANO-CRUZ, ALBA FIGUEROA-OTERO, WANDA I. VÁZQUEZ-BURGOS,

>    Plaintiffs,

v.

JUAN JOSE RODRÍGUEZ-PÉREZ, REINALIZ MIRANDA-MONTES, MUNICIPALITY OF CIALES,

>    Defendants.

Civil No. 13-1701 (JAF)

## **REINSTATEMENT ORDER**

This is a case about contract employees of a municipality whose transitory employment contracts were continuously renewed over as many as eleven years. The First Circuit is very familiar with the concept of transitory employees. These are individuals who central and municipal governments hire disregarding the Puerto Rico personnel laws that basically contemplate career employees and trust employees. It is a local practice to contract transitory employees and they are renewed year after year. They earn less and have no right to a pension or a proprietary interest in employment. *See Cordero v. De Jesus-Mendez*, 867 F.2d 1, 18-20 (1st Cir. 1989).

The thirteen Plaintiffs previously worked for the municipality of Ciales – eleven in the municipality's Child Care Center program and two in the municipality's Even Start

Program – where they served as child care providers, teacher's aides, teachers, and secretaries. These employees started with the programs from their inception. They were the original employees appointed to newly-created contractual positions under the auspices of the New Progressive Party mayor who had been in position in Ciales, Puerto Rico, for about twenty years. Plaintiffs' contractual appointments did not displace a single person.

In 2013, a new governing party, the Popular Democratic Party, was elected by some sixty votes, and Plaintiffs' contracts were not renewed. Plaintiffs allege violations of the First Amendment of the United States Constitution, by way of political discrimination and retaliation, as well as violations of the laws and Constitution of the Commonwealth of Puerto Rico. A jury returned a verdict in their favor finding for all Plaintiffs and assessing back pay, compensatory damages, and punitive damages.

Plaintiffs' demand included a request for equitable relief in the form of reinstatement of Plaintiffs to their contractual positions with all corresponding benefits. Upon the jury's determination in Plaintiffs' favor, the court turns now to the equitable relief requested.

"Once a right and a [constitutional] violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). The court may grant reinstatement as part of the equitable remedies available for § 1983 violations. *Rosario-Torres v. Hernandez-Colon*, 889 F.2d

314, 321 (1st Cir. 1989) (en banc) (whether to reinstate a public employee fired in violation of § 1983 is within the discretion of trial court).

Although a violation of First Amendment rights does not lead *a fortiori* to reinstatement, reinstatement may be, and many times must be, a part of meaningful relief. *Borges-Colon v. Roman-Abreu*, 438 F.3d 1, 20 (1st Cir. 2006). Reinstatement (or "reappointment") requires a "flexible application [that is] particularly desirable in cases involving important private rights and public institutions such as those involving political discrimination." *Velazquez v. Figueroa-Gomez*, 996 F.2d 425, 428 (1st Cir. 1993). The decision to reinstate is up to the district court's discretion on "a case by case basis with a keen eye to the many factors in the balance." *Id.* The order is "reviewed for abuse of discretion. Considerable deference is accorded a reinstatement order, as the district court has had first-hand exposure to the litigants and the evidence and is in a considerably better position to bring the scales into balance than an appellate tribunal." *Hiraldo-Cancel v. Aponte*, 925 F.2d 10, 13 (1st Cir. 1991) (internal quotations and citations omitted).

The First Circuit has said that, "[a]mong the factors relevant to reinstatement analysis are the following: (1) the strength of the evidence proving the first amendment violation; (2) whether the discharged employee has found comparable work; [and] (3) the absence of a property right in the position because the employee was hired in violation of local law." *Borges-Colon,* 438 F.3d at 20. Here, the record is crystal clear. All these contractual employees were hired in strict compliance with municipal needs. There is no

evidence of any violation of local law in the hiring; in fact, Defendant did not even attempt to establish illegality in the appointments.

"Routinely incidental burdens of reinstatement – for example, tension in the workplace, or displacement of employees who had taken on duties previously handled by the fired workers – are foreseeable sequelae of defendant's wrongdoing, and usually insufficient, without more, to tip the scales against reinstatement when first amendment rights are at stake in a section 1983 action." *Id.* Further, monetary damage awards do not prevent a reinstatement order, because the benefits of work go beyond monetary benefits to include psychological benefits. *Id.* The First Circuit has noted that reinstatement, "even for a brief interlude, often affords ancillary benefit to the employee, such as increased seniority, and enhanced eligibility for pension vesting, which do not obtain as consequences of a traditional backpay award." *Hiraldo-Cancel*, 925 F.2d at 13 (internal quotations and citations omitted).

Here, we opt for immediate reinstatement of these thirteen employees who were discriminated against in April 2013 and have suffered irreparable injury by the actions of the Defendant mayor, who by his actions also bound the municipality. Since April 2013, Plaintiffs have not been able to obtain employment in the high unemployment jurisdiction of Ciales, Puerto Rico,[1] and have suffered severe damages of an economical and moral nature. The actions by the mayor and of his municipality were taken with complete

---

[1] It is no secret that Puerto Rico's unemployment rate is astonishingly high, ranging between 11.6% - 15% within the last 12 months (current figures report 12.4% unemployment), whereas the United States national unemployment rate is at 5.5%. (US Bureau of Labor Statistics at http://www.bls.gov/eag/eag.pr.htm and http://www.bls.gov/eag/eag.us.htm last visited 6/30/2015). In the center of the island, such as the Municipality of Ciales, unemployment spikes to levels around 23%. (http://www.bls.gov/lau/laucnty14.txt last visited 6/30/2015.)

disregard to basic legal principles. The discrimination was intentional, malicious, bold, open, and imprudent. The actions by the Defendant were in complete disregard of excellent employment records and the lack of work-related complaints. The mayor destroyed the rights of these Plaintiffs and he utilized, as a co-participant, the services of his campaign manager Eder Arocho, who is not employed by the municipality, to prepare a list of thirteen persons of their own political affiliation to substitute these contract employees in a federally-funded child care and educational program. It was brazen, raw, and irresponsible discrimination based on account of political affiliation.

Prior to trial, the parties entered into two-hundred fifty-seven[2] stipulations which alone establish, or very nearly establish, a prima-facie case of political discrimination and Defendant's violation of Plaintiffs' First Amendment rights. After Plaintiffs had each testified, confirming and further explaining the damaging stipulations, the only real remaining issue for trial was whether the Defendant had neutral reasons to justify his decision to not renew the Plaintiffs' employment contracts.

The evidence presented at trial, including Defendant's own evidence, was devastating against the Defendant mayor. Ms. Blanca Ayala-Ramos,[3] then Director of Human Resources for the Municipality of Ciales, testified that she voiced her concerns to Defendant about the Plaintiffs' contract non-renewals. Defendant assured Ms. Ayala-Ramos that the contracts would be renewed and that the notices of non-renewal were

---

[2] Joint Ex. 15; Docket No. 207.

[3] Originally named a defendant in this litigation, Plaintiffs called Ms. Ayala-Ramos to testify as an adverse witness under Fed. R. Evid. 611 during Plaintiffs' case-in-chief. At the conclusion of Plaintiffs' case-in-chief, the court dismissed the claims against Ms. Ayala-Ramos by entering Judgment as a matter of law in her favor. (See Docket No. 287.)

merely procedural. At the same time, Defendant's campaign manager was preparing a list of people to substitute the terminated Plaintiffs. This list of new employees, which the mayor intentionally endorsed, was comprised of persons who had taken an active role in the mayor's campaign during the 2012 election. The rush to substitute the hand-picked employees was of such a magnitude that the human resources files did not contain essential information on the new contract hires – despite the fact that they would be dealing directly with children. For example, the files did not contain negative certifications from the Federal Sex Offender Registry, which also binds state jurisdictions. Additionally, prior to beginning their employment at the Child Care Center or the Even Start Program, the new hires were not subjected to testing for the use of illegal drugs.

Upon learning that the notices of non-renewal were not merely procedural, and that the Plaintiffs had in fact been terminated and replaced, Ms. Ayala-Ramos resigned. Ms. Ayala-Ramos' resignation was directly related to her disagreement with how the mayor had handled the non-renewal of Plaintiffs' employment contracts and hiring of new employees to fill the positions.

Defendant also called Olga Chévere-Jiménez. Ms. Chévere-Jiménez was another individual who assisted the mayor in preparing an informal dossier to justify removal of the Plaintiffs from their positions. Specifically, she participated with the mayor on the decisions for who should stay and who should be replaced. When called to testify on behalf of the Defendant, Ms. Chévere-Jiménez refused to answer a single question. After

the administration of the oath, no direct examination was conducted and she was excused. Defendant never re-called Ms. Chévere-Jiménez.

Finally, the Defendant, an educated civil engineer, professed being aware that it is wrong to discriminate based on an employee's political affiliation. As much as he tried, the mayor could not articulate any verifiable or substantial reason for the non-renewal of Plaintiffs' employment contracts. The mayor's lack of a non-discriminatory reason was most evident by the fact that before taking the personnel actions, he did not even glance at the personnel records of the displaced employees – all of which had excellent evaluations and no employment-related complaints. This court cannot in justice continue to overlook these realities of the governmental workplace. This type of conduct is deeply rooted and prevalent in Puerto Rico, and enough is enough. We have seen it occur year after year and it is time to plainly denounce this abusive practice. It is entirely possible that the First Circuit is the jurisdiction that has produced the most ample case law, originating in Puerto Rico, during the last thirty years on account of these abuses. The court finds that injunctive relief is necessary to prevent further irreparable injury.

Reinstatement, however, is not enough to make the Plaintiffs whole. As First Circuit Court of Appeals Judge Juan Torruella recognized: "[r]einstatement in political discharge cases is an ineffective remedy when unaccompanied by the payment of the employee's lost wages or compensation for the damages suffered by him and his family." *Figueroa-Rodriguez v. Aquino*, 863 F.2d 1037, 1050 (1st Cir. 1988) (J. Torruella, dissenting in part; concurring in part). "Reinstatement alone fails to provide an effective deterrent to the recurrence of unconstitutional conduct by the public official." *Id*. Back

pay is a valid element of a compensatory damage award under section 1983. *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 568 (1st Cir. 2003). Making whole these Plaintiffs with reinstatement and back pay using the power of injunction is the only way to balance this injustice. See *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-18 (1975) (emphasized the importance of make-whole relief for victims of discrimination); *Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C.*, 478 U.S. 421, 446-47 (1986) (District courts have broad discretion to determine appropriate equitable relief to eradicate the effects of unlawful discrimination and to make whole the victims of past discrimination.) (citations omitted).

At trial, Plaintiffs clearly met their burden of proof, not only by preponderance, but by the great weight of the evidence. The two-hundred fifty-seven stipulations, numerous exhibits, and strong testimony by the Plaintiffs themselves and the supposed defense witnesses, all demonstrate that Defendant Mayor Juan Rodríguez-Pérez violated Plaintiffs' constitutional rights when he failed to renew their employment contracts because of their political affiliation. Additionally, the expeditious payment of the back pay is necessary to prevent further damage to Plaintiffs. Should Plaintiffs be forced to continue to wait to receive their back pay damages – an amount they would already have received but for Defendant's discriminatory acts – the results would be devastating. Plaintiffs have been unable to find other work in the depressed economy; they are currently facing extreme financial hardships. Many of the Plaintiffs are months behind on their mortgage payments, monthly bills, and facing bankruptcy. As the testimony demonstrated, the longer the Plaintiffs go without restitution, the deeper into debt they

will fall. Simply put, not requiring payment of the back pay damages within thirty (30) days would leave Plaintiffs without an effective remedy. This is a prime example of a matter where "justice delayed is justice denied." See *In re Atlantic Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002); Penn, William (1693), *Some Fruits of Solitude*, Headley, 1905, p. 86. ("[T]o delay Justice is Injustice."); *Albemarle Paper Co.*, 422 U.S. at 418 (internal quotations and citations omitted) ("For it is the historic purpose of equity to secure complete justice, [ ] Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.").

Here, the jury awarded back pay for each of the thirteen plaintiffs: Blanca Vázquez Burgos: $33,500.00; Nadianet Guadalupe Santos: $33,500.00; Margarita Rodríguez Grau: $33,500.00; Blanca Olivo Miranda: $42,590.00; Maria Rivas Miranda: $33,500.00; Luisa Acevedo Rivera: $33,500.00; Rebecca Ortiz Ortiz: $33,500.00; Felícita Rivera Cruz: $33,500.00; Alba Figueroa Otero: $33,500.00; Nilsa Miranda Rosario: $33,500.00; Nancy Ortiz Lorenzana: $33,500.00; Wanda Vázquez Burgos: $27,500.00; and Myrta Serrano Cruz: $27,500.00.

Reinstatement and back pay will be ordered as part of the judgment. Reinstatement of each of the thirteen plaintiffs into their previous positions must be completed no later than ten (10) days from the entry of Judgment. Payment of the Back Pay awards must be accomplished within thirty (30) days of the entry of Judgment. Failure to timely reinstate Plaintiffs or remit the back pay awards may result in civil

contempt and all of its consequences including, if necessary, imprisonment under the tenor of the civil contempt rules.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 30th day of June, 2015.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
